Filed 8/23/24  P. v. Hernandez CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CHRISTOPHER MOISES HERNANDEZ,<br><br>Defendant and Appellant. | B326908<br><br>(Los Angeles County<br>Super. Ct. No. YA067279) |

APPEAL from an order of the Superior Court of Los Angeles County, Laura Ellison, Judge.  Affirmed.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.

————————————————————

In 2007, appellant Christopher Moises Hernandez pleaded guilty to one count of attempted murder and admitted the allegation that he had personally used a handgun during the crime. In 2022, he filed a petition for resentencing under Penal Code section 1172.6.[1] The superior court denied his petition, stating that it found "beyond a reasonable doubt that there is sufficient evidence even today to have found the defendant guilty of the crime of attempted murder. He was not a major participant, he was the actual shooter." On appeal, Hernandez contends the court employed the wrong standard in denying his petition; specifically, that it found sufficient evidence to find him guilty instead of finding him guilty beyond a reasonable doubt. We conclude that Hernandez has not demonstrated the court used the wrong standard and that, even if the court had done so, any error was harmless. We therefore affirm.[2]

---

[1] Undesignated statutory references are to the Penal Code. Effective June 30, 2022, section 1170.95 was renumbered as 1172.6 without substantive change. (*People v. Strong* (2022) 13 Cal.5th 698, 708, fn. 2.) For clarity, we use the current statutory numbering.

[2] The People also contend the record of conviction demonstrates Hernandez's ineligibility as a matter of law. Because we affirm the trial court's denial of Hernandez's petition, we need not address this argument.

# FACTUAL AND PROCEDURAL BACKGROUND[3]

A. ***Hernandez Pleads Guilty to Attempted Murder and Agrees That the Preliminary Hearing Transcript Provided a Factual Basis for His Plea***

In 2007, a preliminary hearing was held in which Adilson Reyes testified that, in December 2006, he had been living with his wife for three years. She had a cousin named Martin Carrillo. Reyes was a long-haul trucker and, in December 2006, his wife called him while he was on the road and told him that Carrillo had called and asked her to have sex with him; this was at least the third time Carrillo had made this request. The day after Reyes returned home, he went to Carrillo's house to confront him.

Carrillo was not present when Reyes knocked on the door to his house but, as he turned to leave, he saw Carrillo and Hernandez returning in a pickup truck. Reyes had seen Hernandez with Carrillo "around the neighborhood" in the past. Reyes pulled out of Carrillo's driveway, permitted Carrillo to park, and then blocked Carrillo's truck in with his own car. All parties exited their vehicles and Reyes began arguing with Carrillo; Hernandez left. The argument escalated until Reyes "was about to swing at" Carrillo, but Carrillo ran to the back of the house. After a brief argument with Carrillo's siblings, Reyes returned to his car.

As he was buckling his seat belt, he saw Hernandez walking toward him on the passenger side of the car, from approximately ten feet away. Hernandez screamed "hey" and

---

[3] We limit our summary to the facts and procedural history relevant to the issues raised on appeal.

pointed a gun at Reyes; Reyes laughed at him and made a "come on" gesture with his right hand. Reyes then continued buckling his seat belt and Hernandez "started blasting"; Reyes was shot nine times in his legs and arms. Reyes reversed the car and saw Carrillo come out, grab Hernandez, and pull him toward the backyard of the house. Reyes then drove his car to the corner to see whether Carrillo and Hernandez would exit the house and go somewhere. Reyes heard sirens and drove home; his wife took him to the hospital where the doctors removed some—but not all—bullet fragments from his body. From a group of six photographs shown to him by law enforcement, Reyes identified Hernandez as the person who shot him.

On cross-examination, Reyes stated that he had seen Hernandez "on and off like two years back" and knew his first name, but not his last. He also clarified that, after driving his car to the corner, he waited for approximately five to eight minutes before going home.

The court found sufficient evidence to hold Hernandez to answer on a charge of attempted murder. Two weeks later, Hernandez was charged by information with one count of the attempted willful, deliberate, and premeditated murder of Reyes. It was further alleged that he used a handgun during the crime, which caused great bodily injury.

In December 2007, Hernandez agreed to plead guilty if he could be sentenced to 29 years. Subsequently, the prosecutor amended the sole count of the information to strike out the allegation that the attempted murder was committed willfully, deliberately, and with premeditation. Hernandez pleaded guilty and was sentenced to 29 years—9 years for the attempted murder and 20 years for the use of the gun. As part of his plea,

4

he admitted there was a "[f]actual basis" for his guilty plea, his attorney stipulated that there was a "factual basis as set out in the police report and the preliminary hearing transcript," and the court likewise found there to be a factual basis for the plea. Hernandez also admitted that he "personally and intentionally discharged a firearm during the commission of that crime."

**B.** ***The Court Denies Hernandez's Petition for Resentencing***

In April 2022, Hernandez filed a form petition for resentencing under section 1172.6, checking the boxes next to statements proclaiming his eligibility for relief, and requesting appointment of counsel. In a July 2022 hearing, the prosecutor opined that, although the preliminary hearing transcript, which had been provided to defense counsel the day before, showed that "the defendant is the shooter," she had been authorized to "just agree" that Hernandez had made a prima facie case to "get the hearing done." The court responded that "if there's a plea, and he admitted he's the shooter, it's simple" and that it seemed to the court that if Hernandez "admitted being the shooter in a murder he's not []eligible for the . . . resentencing." Nevertheless, the court stated it would "find at this point that there's a prima facie showing so we can move to the next stage." A hearing was set for October 2022, and the court invited counsel to "brief it" and to "[l]ook at the facts."

In September 2022, the People responded to Hernandez's petition, arguing he was ineligible for relief both because he acted with express malice and because, by pleading guilty to attempted murder and personal discharge of a firearm, Hernandez had admitted he was the actual killer.

5

At the October 2022 hearing, the court continued the matter for an evidentiary hearing to be held in November 2022, to afford Hernandez an opportunity to file a reply to the People's response.

In Hernandez's reply, he argued that he was eligible for relief because "[t]he accusatory pleading charging murder need not and . . . in this case did not specify the manner in which the prosecution relied in prosecuting the murder, nor need it or did it specifically set forth the People's theory of murder" and therefore the People were not limited to prosecuting Hernandez under any particular theory of murder. Hernandez also made clear that the superior court was required to determine "whether, on the state of the evidence at the entitlement hearing, the petitioner has been proven guilty beyond a reasonable doubt under the law as it presently stands." The briefing contained authority that the court was to act as " 'an independent trier of fact.' "

In November 2022, the court denied Hernandez's petition. After Hernandez's counsel pointed out that a guilty plea was not always made because the defendant was factually guilty, and that testimony at a preliminary hearing did not always present "the complete picture," the court asked the prosecutor to confirm that: (1) this was a "negotiated plea disposition"; (2) the testimony at the preliminary hearing was given under oath and subject to cross-examination; (3) Hernandez and Reyes knew each other; (4) they had "some type of beef over a woman"; and (5) Reyes had testified at the preliminary hearing that Hernandez shot him multiple times.

After the prosecutor confirmed these points, the court concluded: "Well, I do find beyond a reasonable doubt that there is sufficient evidence even today to have found the defendant

6

guilty of the crime of attempted murder. He was not a major participant, he was the actual shooter. There was a second person involved, but we're not looking at this person at this date. We're looking at the defendant who was the actual shooter in this case. So he could still be convicted of the crime of attempted murder even under today's laws. [¶] So I deny his motion." Neither party objected nor opined that the court had used an incorrect evidentiary standard. Hernandez timely appealed.

## DISCUSSION

### A. *Governing Law*

Under section 1172.6, subdivision (a), "A person convicted of . . . attempted murder under the natural and probable consequences doctrine . . . may file a petition with the court that sentenced the petitioner to have the petitioner's . . . attempted murder . . . conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of . . . attempted murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of . . . attempted murder . . . following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of . . . attempted murder. [¶] (3) The petitioner could not presently be convicted of . . . attempted murder because of changes to Section 188 or 189 made effective January 1, 2019."

When a defendant files a facially sufficient petition under section 1172.6, the trial court must appoint counsel to represent the petitioner, allow briefing from both sides, and hold a hearing to determine whether the petitioner has made a prima facie

7

showing for relief.  (§ 1172.6, subds. (b)–(c).)  "If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause."  (§ 1172.6, subd. (c).)  At the OSC hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of . . . attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019."  (§ 1172.6, subd. (d)(3).)

### B.  *Hernandez Has Failed to Demonstrate Error*

Hernandez's essential contention of error is that the formulation used by the court to state its ruling on his resentencing petition is "remarkably similar" to the language used in *People v. Duke* (Sept. 28, 2020, B300430) [opn. ordered nonpub. Nov. 23, 2021, S265309] (*Duke*), and that we found such language to indicate the superior court in *Duke* was using a "substantial evidence" standard.  He also asserts that the language used by the court here "may have been the product of lingering misconceptions regarding [the] statute."

"Before the Supreme Court ordered this court on November 23, 2021, to vacate our opinion in *People v. Duke* (Nov. 23, 2021, S265309), review granted January 13, 2021, and before the Legislature enacted an amendment to section 1170.95 abrogating *Duke*, effective January 1, 2022, there was a split of authority as to whether at the section 1170.95, subdivision (d) hearing, the trial court acts as an independent fact finder or applies the substantial evidence test described in *Duke*."  (*People v. Garrison* (2021) 73 Cal.App.5th 735, 745, fn. omitted.)  Hernandez cites this passage from *Garrison* as foundation for his argument that, because the court here stated it had found "beyond a reasonable doubt that there is sufficient evidence even today to have found

8

the defendant guilty of the crime of attempted murder," the court applied the substantial evidence test and did not act as an independent factfinder. We are unpersuaded.

The section 1172.6, subdivision (d) hearing in this case occurred a number of months after the Legislature amended section 1172.6 to make clear that a resentencing court must act as an independent factfinder. "Absent evidence to the contrary, we presume that the trial court knew the law and followed it." (*People v. Ramirez* (2021) 10 Cal.5th 983, 1042.) Moreover, the briefing submitted to the superior court for the hearing made clear that the court was to act as " 'an independent trier of fact' " and was required to determine "whether, on the state of the evidence at the entitlement hearing, the petitioner has been proven guilty beyond a reasonable doubt under the law as it presently stands." The point was also made orally at the hearing when Hernandez's counsel asserted that "the People have not proved their case beyond a reasonable doubt."

We do not think the court's use of the phrase "sufficient evidence" during a part of the oral ruling overcomes the presumption. First, the court's entire statement began with the invocation of the "beyond a reasonable doubt" standard, and included several statements of positive fact that were not qualified by a reference to "sufficient evidence." For example, the court stated that Hernandez "was the actual shooter" and commented that "[w]e are looking at the defendant who was the actual shooter in this case." We view these statements as actual findings made by the court based on the evidence. In addition, before stating its ruling, the court discussed the evidence, including Reyes's testimony that Hernandez was the one who

shot him and observed that "I believe that's competent evidence for me to consider."

Second, the court's use of "is" implies that the court was making a present determination of the state of evidence—in other words, acting as an independent factfinder—and was not evaluating the evidence presented to a previous factfinder for substantial evidence.

Moreover, *Duke* was ordered "depublished" or "not citable" by our Supreme Court. (*People v. Duke* (Nov. 23, 2021, S265309), review granted Jan. 13, 2021.) Depublished cases "are not proper authority and may not be cited." (*Stratton v. Beck* (2018) 30 Cal.App.5th 901, 916.)

Considered as a whole, the appellate record demonstrates the court was expressing its own conclusion that, after reviewing the preliminary hearing testimony and considering Hernandez's plea of guilty to the attempted murder charge and the use of a firearm—which also included a stipulation that the factual basis for the plea included the preliminary hearing evidence—that there *is* sufficient evidence for the resentencing court to find Hernandez guilty beyond a reasonable doubt, and that it was doing so.[4]

### C.  *Any Error Was Harmless*

Even had the superior court employed the wrong standard, Hernandez would still be required to demonstrate prejudice. (See

---

[4] Our conclusion in this regard is consistent with the actions of the parties at the time of the hearing. Neither Hernandez's counsel nor the prosecutor indicated any concern that the trial court may have failed to conduct the hearing and reach conclusions as an independent factfinder.

*People v. Garrison, supra*, 73 Cal.App.5th at p. 745 ["Assuming [defendant] is correct that the trial court applied the wrong standard of proof at the section 1170.95, subdivision (d)(3) hearing, [defendant] cannot demonstrate any prejudicial error"].) He fails to do so.

The only evidence before the court was the sworn testimony of the victim, Adilson Reyes. Reyes testified that he had previously seen Hernandez with Carrillo "around the neighborhood" and recognized him on the day of the attempted murder. As Reyes was buckling his seat belt in his car, he heard Hernandez shout, and saw Hernandez point a gun at him. He selected Hernandez as the shooter from a pack of six photographs that the police showed him.

Hernandez admits on appeal that Reyes's testimony "was *sufficient* to sustain an attempted murder conviction." He nevertheless contends that it is unclear "that the superior court's ruling would have been the same had it applied the proper burden of proof" because: (1) it mistakenly thought Reyes had "some type of beef" with Hernandez over a woman (when in reality, Reyes's "beef" was with Carrillo); (2) nothing in Reyes's testimony provided any explanation as to why Hernandez would have been motivated to try and kill Reyes; and (3) despite having been shot multiple times, Reyes still drove to the corner to see whether Carrillo or Hernandez were going anywhere. These contentions do not support a finding that any error was prejudicial.

First, Reyes testified that he had previously seen Carrillo and Hernandez together "around the neighborhood" and Hernandez was also with Carrillo the morning that Reyes confronted Carrillo. A reasonable inference from that testimony

11

is that Hernandez and Carrillo were friends.  Reyes also testified that he had laughed at Carrillo when Carrillo was threatening him with a gun, and then taunted him with a "come on" gesture, essentially communicating his belief that Carrillo lacked the guts to actually fire.  Such testimony amply explains why Hernandez would have been motivated to kill Reyes (and why the fact that the original "beef" was with Carrillo and not Hernandez was not material)—Reyes had argued with and almost gotten into a physical altercation with Herandez's friend, and then had dismissed and taunted Carrillo.

Second, it is undisputed that Reyes had been shot several times while he was in his vehicle—there has been no testimony, evidence, or even speculation that he was unable to drive home in the state he was in.  Thus, we do not see why Reyes's claim that he did not immediately drive home would have rendered his testimony unbelievable.

On such a record, we hold that, even if the superior court used the wrong standard in determining Hernandez's eligibility for relief, it is not reasonably probable that Hernandez would have achieved a better outcome had it not so erred.  (*People v. Vance* (2023) 94 Cal.App.5th 706, 716–717 [court's use of wrong evidentiary standard in section 1172.6, subd. (d) hearing evaluated for harmless error under "state law 'reasonably probable' standard"].)

12

## DISPOSITION

The superior court's order is affirmed.

NOT TO BE PUBLISHED

                                        KELLEY, J.[*]

We concur:


        BENDIX, Acting P. J.


        WEINGART, J.

---

[*]Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13